UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

YECHIEL WEBER,

                              Plaintiff,           **REPORT AND RECOMMENDATION**

    v.                                                    19-cv-02190 (RPK) (ST)

KAVULICH & ASSOCIATES, PC,

                              Defendant.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

       Plaintiff Yechiel Weber ("Weber") commenced this action against defendant Kavulich & Associates, PC ("Kavulich") on April 15, 2019, seeking to recover for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Kavulich has failed to answer or otherwise respond to Weber's Complaint, and Weber has filed a Motion for Default Judgment against Kavulich. The Honorable Rachel P. Kovner referred Weber's Motion to the undersigned to issue a Report and Recommendation.

       For the reasons set forth below, this Court respectfully recommends that Weber's Motion for Default Judgment be DENIED.

    **I.**      **BACKGROUND**

        **a. Factual Background**

       Unless otherwise stated, all factual statements are based on Weber's allegations in the Complaint and other accompanying documents. Weber is an individual who is a citizen of New York State and resides in Kings County. Compl. ¶ 5, Dkt. No. 1. According to Weber, Kavulich is a collection agency with its principal place of business located at 181 Westchester Avenue, Suite 500C, Port Chester, New York 10573. *Id.* ¶ 7. The Court notes that the two Kings County

Civil Court complaints, submitted by Weber as exhibits and discussed below, identify Kavulich as legal counsel for the plaintiff named in those complaints. *See* Compl., Ex. 1, Dkt. No. 1-1; Compl., Ex. 2, Dkt. No. 1-2. On an unspecified date, Kavulich was assigned consumer debt belonging to Weber. Compl. ¶ 11.

On November 13, 2018, Kavulich filed on behalf of its client a lawsuit for the collection of the debt from Weber, in the Civil Court of the City of New York, County of Kings. *Id.* ¶ 13; *see* Compl., Ex. 1. Specifically, this complaint (the "First Civil Court Complaint") was for the collection of rental arrears for a leased apartment at 1241 41st Street, Apartment 3, in Brooklyn, New York. Compl. ¶ 14. In the First Civil Court Complaint, named plaintiff 1241-41 Street LLC sought damages of $6,300 for breach of the lease and $500 in legal fees. *Id.* ¶¶ 15, 17. The First Civil Court Complaint was endorsed by Kavulich. *Id.* ¶ 16.

Weber filed an answer to the First Civil Court Complaint. *Id.* ¶ 18. After Weber's answer, Kavulich filed on behalf of its client an amended complaint (the "Amended Civil Court Complaint"), on or about January 8, 2019. *Id.*; *see* Compl., Ex. 2. The Amended Civil Court Complaint identified the plaintiff as "Martin Templer d/b/a 1264-41 Street LLC" and adjusted the damages sought to $6,100 for breach of the lease and $500 in legal fees. Compl. ¶¶ 19-20. The Amended Civil Court Complaint was verified by Kavulich. *Id.* ¶ 21.

Weber claims Kavulich never mailed a consumer notice, which 15 U.S.C. § 1692g requires a debt collector to mail to a consumer within five days after an initial communication concerning the collection of a debt. *Id.* ¶¶ 26-27. Weber never received a notice and was never apprised of the validation rights that the FDCPA guarantees a consumer. *Id.* ¶ 28.

    b. **Procedural History**

Weber commenced this action against Kavulich on April 15, 2019. *See generally id.* In the Complaint, Weber alleges Kavulich violated 15 U.S.C. §§ 1692e(10), 1692e(2)(a), 1692e(11), 1692f(1), 1692d, and 1692g. *Id.* ¶ 35. On July 3, 2019, Weber filed an Affidavit of Service indicating Kavulich had been served on May 8, 2019. Aff. of Service, Dkt. No. 10. On July 30, 2019, Weber requested default be entered against Kavulich and the Clerk of Court entered default on August 8, 2019. Request for Certificate of Default, Dkt. No. 11; Clerk's Entry of Default, Dkt. No. 12. Following an order from Judge Kovner, Weber filed the instant Motion for Default Judgment on March 18, 2020. Electronic Order dated March 3, 2020; Mot. Default J., Dkt. No. 13. The Affirmation in Support of Weber's Motion for Default Judgment reiterates the claims from the Complaint and seeks $1,000 in damages pursuant to § 1692k(a)(2)(A), $400 in filing fees, $90 in service fees, and $2,920 in attorney's fees. Affirm of Joseph Baliosk Supp. Mot. Default J., 3, Dkt. No. 13-1.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure establish the procedure by which a default judgment may be obtained. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (explaining the process for entry of default and entry of default judgment prescribed by Fed. R. Civ. P. 55). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against the defendant, and the defendant fails to appear to move or set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

A party in default is deemed to concede all well-pleaded factual allegations in the complaint pertaining to liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989); *see also Rolls-Royce PLC v. Rolls-Royce USA*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) ("[I]t remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."). A court considering a motion for default judgment thus retains the discretion to determine whether the entry of default judgment is appropriate in the given case. *Enron*, 10 F.3d at 95; *see also Taylor v. 312 Grand St. LLC*, 15 Civ. 5410 (BMC), 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." (citations omitted)). A plaintiff moving for default judgment against a defendant in default thus retains the burden to establish the defendant's liability on any asserted cause of action on the basis of the unchallenged factual allegations and reasonable inferences drawn from the evidence in that case. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . .").

### III.     DISCUSSION

#### a.   This Court has Jurisdiction

Per 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), this Court has federal subject matter jurisdiction over the present matter. Venue is proper because a substantial part of the events or

omissions giving rise to the claim occurred within the Eastern District of New York. 28 U.S.C. § 1391(b)(2).

### b. Kavulich has Defaulted

Despite being properly served by Weber on May 8, 2019, Kavulich failed to answer or otherwise respond to Weber's Complaint. *See* Aff. of Service. Weber filed a Request for Certificate of Default on July 30, 2019, pursuant to which the Clerk of Court entered a Certificate of Default against Kavulich on August 8, 2019. Req. for Certificate of Default; Clerk's Entry of Default. Thus, per the standard provided by Federal Rule of Civil Procedure 55(a), Kavulich is properly considered to have admitted all factual allegations in the Complaint and is subject to this Court's assessment of its liability thereby.

### c. Kavulich is not liable under the FDCPA

The FDCPA aims to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is a strict liability statute. *Arias v. Gutman, Mintz, Baker, & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017). As the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 738 F.3d 88, 98 (2d Cir. 2013) (quoting *N.C. Freed Co. v. Bd. Of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973)).

To establish an actionable FDCPA claim, a plaintiff must show: "(1) the plaintiff is a 'consumer' within the meaning of the Act; (2) the defendant is a 'debt collector'; and (3) the defendant must have engaged in conduct in violation of the statute." *Rani v. Drobenare*, 19-cv-05186 (MKB) (ST), 2020 WL 6370249, at *4 (E.D.N.Y. Aug. 19, 2020) (citation omitted), *adopted by* 2020 WL 5417555 (E.D.N.Y. Sept. 9, 2020). Per the FDCPA, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt" and a "debt collector" is "any

5

person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(3), (6). The statute defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* § 1692a(5). "[C]ourts in this Circuit have concluded that this definition includes overdue rent for residential premises." *Rani*, 2020 WL 6370249, at *5 (citing *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 115 (2d Cir. 1998)).

The First Civil Court Complaint and the Amended Civil Court Complaint both allege Weber is indebted to 1264-41 Street LLC for outstanding rent. Compl., Ex. 1 ¶ 1; Compl., Ex. 2 ¶ 5. Accordingly, Weber is a "consumer" as defined by the FDCPA.

The question of whether Kavulich qualifies as a "debt collector" under the FDCPA requires a more thorough analysis. Weber asserts that Kavulich is "a collection agency" and is "regularly engaged, for profit, in the collection of debts allegedly owed by consumers." Compl. ¶¶ 7-8. However, both the First Civil Court Complaint and the Amended Civil Court Complaint make clear that Kavulich is legal counsel for 1264-41 Street LLC. *See* Compl., Ex. 1 at 1 ("1264-41 Street LLC, by its attorneys, Kavulich & Associates, PC . . ."); Compl., Ex. 2 at 2 ("Martin Templer d/b/a 1264-41 Street LLC, by its attorneys, Kavulich & Associates, P.C. . . ."). Weber does not explain this discrepancy.

According to the Second Circuit, "whether a lawyer or law firm 'regularly' engages in debt collection activity within the meaning of section 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." *Goldstein v.*

6

*Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62 (2d Cir. 2004). These factors include:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Id.* at 62-63. The plaintiff "bears the burden of proving the defendant's debt collector status." *Id.* at 60.

The well-pleaded factual allegations in the Complaint demonstrate that Kavulich filed two complaints in a single matter in Kings County Civil Court, on behalf of 1264-41 Street LLC and against Weber. Compl. ¶¶ 13, 18. The Complaint does not allege that Kavulich engaged in any other debt collection activity.[1] Under the circumstances, *Rutty v. Krimko* is instructive. In that matter, the plaintiff alleged "the attorney defendants . . . filed false documents in the foreclosure action," but "did not allege any facts showing that they *regularly* engaged in debt collecting activities." *Rutty v. Krimko*, 789 F. App'x 916, 918 (2d Cir. 2020) (Summary Order) (emphasis in original). Accordingly, the Second Circuit found that the plaintiff "failed to allege that the attorney defendants were debt collectors subject to the FDCPA" and upheld the District Court's decision to grant the defendants' motion to dismiss. *Id.* Similarly, in the present case, Kavulich's alleged debt collection activity begins and ends with its filing of complaints in Kings County Civil Court. Therefore, Weber's well-pleaded factual allegations do not establish that

---

[1] In discussing the complaints filed in Kings County Civil Court, Plaintiff notes, "[t]he mailings are a 'communication' as defined by 15 U.S.C. § 1692a(2)." Compl. ¶ 22. Plaintiff does not explain what the "mailings" are and, as no other documents are referred to in the Complaint, the Court assumes the "mailings" are the complaints that Kavulich filed in Kings County Civil Court.

7

Kavulich regularly engaged in debt collection practices such that it is a "debt collector" for purposes of the FDCPA.

As indicated above, Weber also notes the debt was "assigned or otherwise transferred to [Kavulich] for collection." Compl. ¶ 11. Weber does not specify when the debt was assigned, only that the assignation or transfer was made "on a date better known by [Kavulich]." *Id.* An assignee of debt is excluded from the FDCPA, "unless the debt sought to be collected was in default at the time it was obtained." *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 301 (E.D.N.Y. 2008) (internal quotation marks omitted) (quoting *Kinel v. Sherman Acquisition II LP*,05 Civ. 3456 (RCC) (THK), 2006 WL 5157678, at *6 (S.D.N.Y. Feb, 28, 2006), *adopted by* 2007 WL 2049566 (S.D.N.Y. July 13, 2007)); *see also Rutty*, 789 F. App'x at 917 ("creditors—entities that 'purchase a debt and then try to collect it'—are not debt collectors within the meaning of the statute because they seek to collect a debt that they own" (citing *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720-24 (2017)). However, those "who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection." *Larsen*, 533 F. Supp.2d 290, 301 (internal quotation marks omitted) (citing *Kinel*, 2006 WL 5157678, at *6). Weber fails to allege Kavulich was assigned Weber's debt after the date of default. Even if Kavulich was assigned the debt at some point after default, as discussed above, Weber has not alleged facts to show that Kavulich as a law firm regularly engaged in debt collection activity.

Because Weber's well-pleaded factual allegations do not establish that Kavulich is a "debt collector" for FDCPA purposes, the Court respectfully recommends Weber's Motion for Default Judgment be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Weber's Motion for Default Judgment be DENIED.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
March 2, 2021